United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and His Honorable Court. Please be seated. Good morning. Well, this has been a rather eventful morning, hasn't it? And so it looks like we're ready to go. I'd like to, first of all, thank Judge Marino for his gracious hospitality in permitting us to use his courtroom for our oral arguments this morning. I'd like to thank Judge Marino and all of the members of his staff, and especially thank Miss Pisa, our courtroom deputy. He's worked really hard in order to make arrangements for us to have our arguments this morning, as well as Mr. Nelson, our court security officer. So it looks like we are ready to go this morning, and we have four arguments that are scheduled this morning. The first is the United States of America v. Terius Thomas. Margaret Foldis is here for Appellate Thomas. Robert Jewman is here for the United States. And Miss Foldis, you may begin your argument. Thank you, and good morning, and may it please the Court. Margaret Foldis, Assistant Federal Public Defender, on behalf of Mr. Terius Thomas. Mr. Thomas' sentence should be reversed because there was a guideline error that was plain. The government has conceded it, and it prejudiced Mr. Thomas' substantial rights. And under Supreme Court authority, this Court should correct it by reversing it and remanding it to the District Court. There were actually two different errors that were done in the District Court for the sentencing. I'm going to concentrate on the first error, which is the guideline error, and then when I finish that, I'll go on to the second error. So the first error was that the District Court miscalculated the guideline range, and it did so because it thought that Mr. Thomas had a criminal history category of three, when in fact he had one of – the category was two, and that changed the guideline range. The wrong guideline range was 63 to 78 months. The correct guideline range was 57 to 71 months. What evidence do you have that the District Court actually based its sentence on the incorrect guidelines range, as opposed to having a different idea of what the sentence should be based on other things? Well, under the Supreme Court authority of Molina v. Martinez, the guidelines are always part of the calculation. It's always part of the calculation, but that case is clear that it's not a per se rule. It's not that any time the guidelines calculation is off, it's a reversible error. Now, the vast majority of times, I'll certainly give you, but I think that the Supreme Court allowed for the fact that sometimes that kind of error doesn't actually affect the ultimate sentence. I agree with you that there can be exceptions to the rule, but the rule is actually very strong because the guidelines play such a central and systemic role within the whole sentencing process. Can I ask you, because when you read Molina v. Martinez, it specifically says the error itself can and most often will be sufficient, so it's not per se. That's correct. Molina also says, however, it specifically discusses when a court does a variance, and it specifically says on page 189 that even with variances, the guidelines are in a real sense the basis for the sentence. When you read the sentencing hearing with Judge Smith, he really focuses on the criminal history and the crime itself that your client committed in this case, and that seems to be the basis for the 120 months that he gave Mr. Thomas. The criminal history had to do with the guideline range itself, and so the two are kind of linked together in that sense. But to the degree that the government had asked for an upward variance of 150 months, Judge Smith stated on the record that he was not going to impose that, and he then articulated the reasons why he was imposing 120 months, and that was based on your client's criminal history and the facts of this case. Mr. Judge Smith seemed to be very concerned with the fact that he shot not just once but twice. It's true that Judge Smith had made some references to the criminal history and to the incident that occurred in this case, but he did not go too far as to say that he was tossing out the guidelines, and under Molina, the rule is extremely strong that the error itself is evidence of prejudice under the third prong of the plain error test, and under Pew v. United States, which is another Supreme Court case, it even says it a little stronger on page 542. It says that a district court may ultimately sentence a given defendant outside the guideline range does not deprive the guideline of force as a framework for the sentencing. Indeed, the rule that an incorrect guideline calculation is procedural error ensures that they remain the starting point for every sentencing calculation in the federal system. That's what Pew said. The government makes the argument that it wouldn't really make a difference if the guideline range was properly recalculated because he would still get 120 months. It seems like a stretch to say that he wouldn't get 120 months if the court correctly calculated the guideline. Under Molina and Pew, every guideline is controlled to some degree by the guidelines, and so in order to get out from that perspective, that's the Supreme Court's perspective, not mine. You can't just infer that because they buried up that the guideline range is no longer important. I agree with that, but I think you're fighting Molina, which is clear that in most cases, a defendant who has shown that the district court mistakenly deemed applicable and incorrect higher guidelines range has demonstrated a reasonable probability of a different outcome. And in most cases, Molina is very clear that there can be exceptions. So what I'm trying to find out is here, why do you think that this sentence was based on the guidelines range, understanding that sometimes the Supreme Court has told us that this rule will not apply even when the guidelines range is incorrectly calculated. And I'm not fighting Molina, I'm actually embracing Molina. Molina's exception to the general rule has to do with what the district court actually says. It has to disassociate itself from the guidelines. It has to say that the guidelines wouldn't matter or the errors wouldn't matter. But here, the district court noted that if your client's identical conduct had been charged in state court, he would have received a mandatory minimum of at least 20 years with a maximum of life. It seems to me that the court is tethering its decision as much to what the state court penalty would be as to the incorrect guidelines range, which the court said that the criminal history of three was already too low. Why do we think that it would have made a different decision with an even lower criminal history? It already rejected category three as too low. So there's two separate issues. The first one has to do with the fact that, I'm sorry, the first part of it you were talking about where it had referenced to the state court thing. That was something that the government had injected into the sentencing. But what's really important and significant is that the court didn't give that sentence. And the fact that it didn't adopt that shows that the court had some other number besides that number in the back of its mind, which I would argue was the sentencing guideline that he started out the sentencing with. I think the fact that he didn't give the higher number is proof that he was still, to some degree, relying on the base initial benchmark of the guidelines, which, again, means that Molina controls because the guidelines don't leave. Judge Smith did not completely disassociate himself from the guidelines. And that's the difference between when Molina controls and when it doesn't. Because there is such a strong systemic pull by the guidelines, in order for the court, the district court, to be the exception and not the rule under Molina, the district court has to do something unusual in the actual record. What do you think the court would have to say in order to take the situation out of Molina? I think that the court would have to say, like it does in many cases, I'm not paying attention to the guidelines. Even if I made errors, I would still get the same sentence. I think that's what I have to do. Does the Keene argument? That seems like less to me than the district court did here. Well, there's that part about errors, but there's also, like the court would have to say, I'm not paying attention to the guidelines. And it didn't say that. If anything, it was silent. And under Molina, when you have a silent record, that doesn't change the general rule. On page 201, it says, when the record is silent as to what the district court might have done, if it had considered the correct guideline range, the court's reliance on the incorrect range in most instances will suffice to show an effect on the defendant's substantial rights. And the way that Molina defines reliance is if the guidelines are part of even the baseline and the starting point of the guidelines. So I think with Molina and Pew, if you go back, those cases really show the guideline pull, and unless the court does something really unusual in the record, which is different than a variance, because variances are not that unusual. So the court has to do something more than that. It has to, I think, specifically say, I'm not paying attention to the guidelines. It just seems like such a stretch. If we vacated and remanded the sentence back for resentencing to the district court, that he still wouldn't get 120 months just based on the factors that the district judge relied upon. I think that is a big moment. He has to show that his substantial rights were affected. And so it seems like a stretch. He's not going to get 120 months if his guideline range was 57 to 71. It doesn't have to go down to a guideline range. It could go down to a smaller upward variance. All that Molina requires is that the sentence would be different. So it's not an all-or-nothing proposition. If it's remanded, it's very – It would be something other than 120 months? Say again? You said all that Molina requires is that there's a chance that it would be something other than 120 months? Correct. That's exactly what I'm saying. Because the court has to consider the extent of the variance. And I think it was – But, again, the issue I'm having is that this is not a case, and we have many sentencings where the district court judge maybe doesn't articulate what the thought process is in terms of why they're going to sentence a defendant to a particular thing. But here you had a very long exchange between a district court judge and the defendant where they had a colloquy and a discussion about what had transpired. And there clearly was a discussion and a rationale for the 120 months by the district court judge. So I'm having an issue with thinking that if it goes back, that Judge Smith is not going to – is going to reconsider this 120 months. Well, it's true that – If I could just interrupt you for a second. I neglected to mention at the beginning of our arguments that we don't have the red light in this courtroom. So Ms. Pisa is going to let you know when there's two minutes left. And she's also going to let you know when your time has expired and the red light is on. Right. So I think you have two minutes. Is that right, Ms. Pisa? The argument is over. I made the two-minute announcement, but I can add if you want. Okay, I'll give you an extra two minutes. Thank you. Okay, so my answer was to your question. It's just that it's true that the court gave some reasons why it wanted to vary up. But it was also proceeding on the errors of the guideline itself. And the second error, which I haven't gotten to yet, which is that the court had erroneous facts about what the nature of his prior criminal history was. The court specifically said that it was a history of violence over and over again, which is a pretty high opinion that the court had. And if you go back to the PSI and you look at every single thing in his juvenile and adult, there is not a violent felony in there. And the court also said that it's thought that he had prior robberies, which he did not. He did not have one prior robbery. This case that's in front of the court right now is the first robbery conviction that he has had. All right. So thank you. Thank you. And you've reserved your time for a bubble? Yes, sir. One moment. Okay. Thank you. And we'll hear from the government. This is Mr. Juman. Thank you. Robert Juman from the United States. May it please the court. I believe the court understands the government's arguments. I'd like to focus on those aspects of the record, which we think put this case squarely in the exceptions of Forth and Molina-Martinez. After establishing the guideline range and that there were no objections to it, which the court was required to do, the court then only mentioned the guidelines once again. And only then to disassociate his sentence from those numbers. On page 11, the court says very clearly, after referring to criminal history category 3, that's not the same as this case. And then again, when he refers to the defense counsel's argument about what the guideline range is, he says that's not the same. He says there are levels and there are levels. And it's clear in context. So your argument then is that the court didn't rely on the guideline range to determine that I'm going to give him 120 months. Correct. Their argument is that those statements that the court made are sort of vague statements. And how do we rely on these vague statements to make that determination? Your Honor, we think that you can – when looking at the court statements, I would make two points. First, we look at all of the court statements. We don't take any one statement in isolation. And second, I think it's important to remember what the judge was doing here. The judge was communicating directly to Mr. Thomas. He was trying to explain to Mr. Thomas, to get through to Mr. Thomas, his overall message, which is if you continue on this path, either you'll be dead or you're going to kill somebody. That was what the judge was trying to convey. He wasn't dictating a formal legal opinion. He wasn't using these terms in the way that Black's Law Dictionary would. He was trying to get through to Mr. Thomas. And so when explaining the reasons for his sentence, after saying Category 3 is inadequate, after saying Level 24 is inadequate, he then seven separate times refers to the fact that Thomas fired not once but twice. And this is a factor that's not reflected in the guideline range. Mr. Thomas would have been facing the same range if he'd only fired once. But the judge was really focused on the fact that he fired twice. But this was, he had a pretty extensive juvenile record. But this is the first time that a firearm was used, right? This is the first time that a firearm was used by Mr. Thomas. And Mr. Thomas had been shot at once during a car theft, as the judge also elicited and asked him. Yeah, so was the judge under the misimpression that he had used a firearm before? There's nothing in the record to suggest that, Your Honor. I will acknowledge the judge may have been imprecise at one point. He did at one point refer to plural robberies. Again, speaking in plain English, we lawyers distinguish between embezzlement and theft and burglary and robbery. We have all these definitions based on elements. Speaking in plain English, it was clear what the judge meant. And that's why there was no objection below. He was saying every time you steal from somebody, however the law defines it, you are creating a risk of violence. I mean, there's several grand thefts. I mean, technically, that's a robbery. It's not, it's a grand theft. Defined as a grand theft, not a robbery. Yes, Your Honor. And again, in addition to the firing once, not twice, or twice but not once, four separate times, the judge commented on how close this was to a murder case. And again, that's something that's not reflected in the guidelines. Mr. Thomas would have faced the same range if he had fired a warning shot in the air. That's not this case, as the court took pains to point out, four separate times. And at least six separate times, the judge discussed his criminal history. And again, not just about the nature of it, although the judge was very clear that any time you engage in this kind of conduct, you're risking violence, but also the repetition. And when you look in the transcript, how many times the judge says, arrest after arrest, over and over again. He was commenting, and it comes through in the PSR. Mr. Thomas was engaging in these crimes, sometimes within days of each other. He'd get arrested, and four days later, he'd be arrested again. And so again, the judge was trying to get through to Mr. Thomas and explain how lucky he was that he wasn't in state court, but also that— He's also lucky he wasn't killed here because the Uber driver didn't have a gun. Yes, and the judge says, if it had been somebody with a gun, you could have been shot. And he, in fact, asks them, have you been shot before? And in the PSR, Mr. Thomas was shot once. I just wonder, though, just in an abundance of caution, because the Supreme Court has made it clear, including in United States v. Saul, that there is procedural unreasonableness when a court miscalculates the guidelines. And the government even concedes that the court miscalculates the guidelines in this case. And so— Absolutely. No, absolutely. I think they should remand so that the court can calculate the guidelines correctly and then make its determination as to what a sentence should be. Your Honor is absolutely right, but abundance of caution is not the standard. We think, first of all, Melina Martinez sets forth an obligation. It's not just—you know, there's no magic words requirement. It just says you look at the record. And if the record makes clear that the judge would have imposed the same sentence or imposed a sentence by looking at factors other than the guidelines, then there is no error. And also, again, we're on plain error review. The burden is on the appellant. And if we're going to respect that burden, there has to be some showing. And if the court finds on this record that that burden has been met, yes, absolutely, there should be. And the burden is to show that his substantial rights were affected. Yes. And you're saying that that's not what we have here, that he is unable to demonstrate that his substantial rights were affected. That's it. Okay. Yes. And if there are no other questions, the government relies on its papers. Thank you. Thank you, Mr. Zuman. Ms. Bolden, you reserve some time for rebuttal. Thank you, Your Honor. I just wanted to touch on his prior criminal history. I wanted to just put in perspective. His entire criminal history spans five years. Half of that was when he was 16. The other half is when he was an adult. Remind me how old Mr. Thomas was at this time. 21. It's hard to have a criminal history much longer than five years if you're 21, right? Yes, but it's different than a defendant who has, like, 30 years of a track record. And none of those priors are as violent over and over again as what the court was believing it to be. None of them were robberies. So I just wanted to point that out. The other thing I also wanted to point out to the court is I wanted to call your attention to Rosales Morales' case because that goes through a pretty deep analysis of why the guidelines are so important and why Molina came up with the rule that it did. And one thing that I think really stuck out is the Supreme Court views guideline errors as partially judicial errors itself because the judiciary has its own probation office that comes up with these numbers first. And so in that stage, the judiciary is actually the one that's injecting the error into the process. That's what the Supreme Court says in Rosales Morales on page 140. It also pointed out in that same case that correcting guideline errors is not difficult to the same degree that you would remand a case for trial. And it kind of concludes with something that's very relevant and very important, I think. It says, what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if the courts refused to correct obvious errors of its own device that threatened to require individuals to linger longer in federal prison than the law demands? So I think those underlying goals and reasons why the guidelines are so important is exactly why Molina Martinez has the rule that it does. And there are exceptions, but the district court has to proactively take itself out of the general rule. I can point to the actual errors in this record and I can point to controlling authority, which is Molina. The government really can't point to anything in the record where the court proactively said, I'm not paying attention to the guidelines. I believe that Mr. Thomas has met all four elements of the plain error standard, and we would just request that the court reverse it under both Molina and Rosales Morales. Thank you. Thank you, Ms. Holder and Mr. Dillon.